IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

MAURICE EDWARD JACKSON,

    Petitioner,

v.                                                  Civil Action No. 1:13cv256
                                                 (Judge Keeley)

TERRY O'BRIEN, Warden,

    Respondent.

## REPORT AND RECOMMENDATION

On November 27, 2013, Maurice Edward Jackson ("Jackson"), the *pro se* petitioner, then-incarcerated[1] at USP Hazelton in Bruceton Mills, West Virginia, initiated this case by filing a petition pursuant to 28 U.S.C. §2241, along with a motion to proceed *in forma pauperis* ("IFP") and supporting documents. On December 17, 2013, petitioner was granted IFP status but directed to pay the $5.00 filing fee. On January 9, 2014, petitioner paid the requisite fee.

This matter, which is before the undersigned for a Report and Recommendation pursuant to 28 U.S.C. §1915 and LR PL 2, is ripe for review.

### I. Factual and Procedural History[2]

Beginning in the summer of 1991, a drug organization led by Mark Anthony Davis ("M. Davis") transported approximately 125 grams of crack cocaine from Washington, D.C., and New York, New York, to Front Royal, Virginia, every two to three weeks. Dealers associated with the organization, including petitioner, Isaac Stevenson ("Stevenson"), Cecil Browning, and R. Davis, the brother of Mark Anthony Davis, then sold the drugs in the Front Royal area.

Several witnesses linked the three defendants with M. Davis's drug organization. Greg Browning testified that the three men had traveled to New York with his brother Cecil to purchase

---

[1] Petitioner is now incarcerated at Coleman USP in Coleman, Florida.

[2] The facts of petitioner's underlying criminal conviction are taken from the Fourth Circuit's opinion denying his direct appeal. See United States v. Stevenson, 1996 U.S. App. LEXIS 1578 (4th Cir. 1996).

1

crack. Other witnesses testified that they had purchased crack from Stevenson and R. Davis and that they had seen Jackson selling drugs and in possession of more than personal use quantities of cocaine. In addition, in a statement to the police, Jackson admitted to hustling crack. Another witness testified that M. Davis had stated that all three defendants were responsible for "taking care of what he [M. Davis] wanted."

Stevenson also acted as Davis' enforcer or second in command, using threats and intimidation to collect debts and maintain discipline within the drug organization. In October, 1992, in Front Royal, Stevenson hit Cecil Browning's kneecap with the blunt end of a fireman's axe, sending him to the hospital. A witness had heard Stevenson say that he had come to Front Royal to take care of business for M. Davis.

By late November 1992, Cecil Browning had fallen behind in his drug payments to M. Davis. On November 12, 1992, a witness heard Stevenson tell Cecil, using an obscenity, that he better have the money tomorrow. R. Davis then told Cecil, using an obscenity, that if he did not, R. Davis would shoot him. This conversation took place in front of a Front Royal house known as an open-air drug market. On the same day, another witness saw R. Davis stabbing a chair with a knife, saying "somebody getting this."

On the afternoon of November 13, 1992, Cecil Browning checked into room 208 of the Scottish Inn Motel in Front Royal, accompanied by one Avis Rochelle Aylor. Later that day, witnesses saw R. Davis and Cecil arguing. There was other testimony to the effect that Cecil had complained about Stevenson poking him with a knife.

That evening, Stevenson, Jackson, R. Davis, and Cecil Browning went back to room 208 to watch TV. Later, Jackson left to spend the night with one Rita Mahoney at a nearby motel. Mahoney testified that Jackson remained there with her until 3 or 3:30 a.m.

At about 12:30 a.m., Cecil Browning left Stevenson and R. Davis and registered for another

room at the Scottish Inn Motel, room 209. Around 2:30 a.m., guests in the rooms below room 209 heard loud thumps within seconds of each other from above, and then heard someone scream: "Let's get out of here, let's go." About the same time, Stevenson and R. Davis started looking for Jackson so that they could leave town. After locating Jackson, the three men drove to Washington, D.C., sometime during the early morning hours of November 14.

The bodies of Cecil Browning and Avis Rochelle Aylor were found in room 209 approximately five and a half hours later. Cecil had been shot near the entrance to the room, and Aylor's body was found in the bathtub. Evidence introduced at trial indicated that someone wearing K-swiss type sneakers had kicked in room 209's door, and an imprint from a K-swiss type sneaker was found in the bathroom. Stevenson wore K-swiss type sneakers. In addition, Stevenson's palm print was on the outside of room 209's door.

At trial, a witness testified that he had heard Stevenson admit that "he went in there, boom, boom, boom, and threw the bitch in the tub." The witness testified further that R. Davis had heard Stevenson's statement and had told him to be quiet. Another witness stated that Stevenson had claimed that Jackson had shot Cecil. The same witness testified that Stevenson had admitted telling Jackson to kill Rochelle Aylor in order to prevent her from implicating Jackson. Other witnesses contradicted this testimony.

On November 30, 1993, along with his four surviving co-defendants, petitioner was indicted on one count of a three-count indictment, charging him with Conspiracy to Possess with Intent to Distribute Crack Cocaine, in violation of 21 U.S.C. §846. Two of the co-defendants entered pleas. Ultimately, petitioner and his remaining two co-defendants were tried jointly. On July 18, 1994, after a six-day jury trial, all three were convicted.

On October 28, 1994, Jackson was sentenced to 360 months imprisonment, to be followed by five years' supervised release.

Jointly with Stevenson and R. Davis, petitioner timely appealed, alleging that the district court's denial of his motion for severance violated his specific right under the Speedy Trial Act; that a joint trial prevented the jury from making a reliable judgment about his guilt or innocence; the evidence linking him to the conspiracy was insufficient; the district court erred in denying his motion to strike his in-court identification by a witness, evidence that should have been suppressed; and that the district court abused its discretion by not ordering a mistrial. On February 5, 1996, by unpublished *per curiam* opinion, the Fourth Circuit Court of Appeals affirmed the district court's judgment.[3] On May 2, 1996, Jackson petitioned the United States Supreme Court for a writ of *certiorari*. *Certiorari* was denied on May 28, 1996.[4]

Petitioner has filed three Motions to Vacate pursuant to 28 U.S.C. §2255 in the sentencing court;[5] all were denied.[6] He filed a Motion to Reconsider the Order denying the second §2255; it was denied.[7] He unsuccessfully appealed the Order denying his Motion to Reconsider the denial of second §2255 to the Fourth Circuit Court of Appeals.[8] He filed a motion pursuant to 28 U.S.C. §2244 in the Fourth Circuit on August 8, 2013; it was denied by Order entered August 19, 2013.[9]

## II. Claims Raised by the Petitioner

---

[3] (4th Cir. Dkt.# 69)(94-5875).

[4] (4th Cir. Dkt.# 95)(94-5875).

[5] (W.D. Va. Dkt.# 207, 212, and 216)(5:93cr30025).

[6] (W.D. Va. Dkt.# 209, 214, and 218)(5:93cr30025).

[7] (W.D. Va. Dkt.# 218)(5:93cr30025).

[8] (W.D. Va. Dkt.# 225)(5:93cr30025).

[9] (W.D. Va. Dkt.# 229)(5:93cr30025).

Petitioner attacks the validity of his conviction and sentence, asserting that "under the now retroactive Simmons[10] decision" he is actually innocent of the §4B1.1 career offender enhancement he received at sentencing, because of his two prior qualifying felony convictions.

He contends that the reason why his remedy by way of §2255 is inadequate or ineffective to test the legality of his detention is that the Simmons decision was not made retroactive until August 28, 2013.

As relief, petitioner requests that the court vacate his "now un-constitutional sentence under the retroactive application of Simmons with orders to re-sentence . . . [him] without the §4B1.1 enhancement."[11]

### III. Analysis

Title 28, United States Code, Sections 2241 and 2255 each create a mechanism by which a federal prisoner may challenge his detention. However, the two sections are not interchangeable. Section 2255 is the appropriate method for a federal prisoner to challenge his conviction or the imposition of his sentence. Adams v. United States, 372 F.3d 132, 134 (2nd Cir. 2004); see In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000). Conversely, §2241 is the proper method for challenging the execution of a sentence. Adams at 135; see In re Jones, at 332-33. In a §2241 petition, a prisoner may seek relief from the administration of his parole, computation of his sentence, disciplinary actions taken against him, or the type of detention and conditions in the facility where he is housed. Adams at 135.

In his petition, the petitioner attacks the validity of his sentence rather than the means of its execution, and seeks an order vacating his "now un-constitutional sentence under the retroactive

---

[10] Simmons v. United States, 649 F.3d 237 (4th Cir. 2011).

[11] Dkt.# 1-1 at 4.

application of Simmons with orders to re-sentence . . . [him] without the §4B1.1 enhancement."[12] Accordingly, it is the type of challenge that ordinarily must be brought under §2255 and not §2241. A federal prisoner attacking the validity of his conviction or sentence may utilize the provisions of §2241, but only when §2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. §2255; In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997). The law is clearly developed, however, that merely because relief has become unavailable under §2255 because of a limitation bar, the prohibition against successive petitions, or a procedural bar due to failure to raise the issue on direct appeal, does not demonstrate that the §2255 remedy is inadequate or ineffective. In re Vial, at 1194. Moreover, in Jones, the Fourth Circuit held that:

> §2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first §2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gate-keeping provisions of §2255 because the new rule is not one of constitutional law.[8]

Jones, 226 F.3d at 333-34.

Therefore, the remedy provided under § 2255(e) opens only a narrow door for a prisoner to challenge the validity of his conviction or sentence under § 2241. Based on the language in Jones, it is clear the Fourth Circuit contemplated a situation in which a prisoner is imprisoned for an offense which is no longer a crime.

---

[12] Dkt.# 1-1 at 4.

[8] The "gatekeeping" requirements provide that an individual may only file a second or successive §2255 motion if the claim sought to be raised presents:

  (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense; or

  (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Here, the petitioner does not challenge his underlying convictions for conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §846. Instead, he alleges that he should not have been subjected to an enhanced sentence as a career offender under §4B1.1 because one of his prior state convictions did not qualify as predicate offense to increase his statutory penalties. However, such a challenge is not cognizable in a § 2241 action.

Fundamentally, "Fourth Circuit precedent does not support the extension of the savings clause to petitioners who challenge only their sentences." Petty v. O'Brien, 2012 WL 509852 (N.D. W.Va. Feb. 15, 2012) (citing United States v. Poole, 531 F.3d 263, 267 n. 7 (4th Cir. 2008)). Rather, the § 2255 savings clause is "confined to instances of actual innocence of the underlying offense of conviction," not just "innocence" of a sentencing factor. Darden v. Stephens, 426 F. App's 173, 174 (4th Cir. 2011) (*per curiam*) (refusing to extend the savings clause to reach the petitioner's claim that he was actually innocent of being a career offender). Here, the petitioner does not assert that the conduct for which he was actually convicted is no longer criminal. See In re Jones, 226 F.3d at 334.

Relying on the decision in Petty, and the guidance of the Fourth Circuit in Darden, the undersigned concludes that the petitioner has failed to state a cognizable §2241 claim because he merely challenges a sentencing factor and not the crime for which he was convicted. See also Little v. Hamidullah, 177 F. App'x. 375, 375-76 (4th Cir. 2006); Green v. Hemingway, 67 F. App'x. 255, 257 (6th Cir. 2003) ("Even if it assumed that [Petitioner]'s allegations are true, the 'actual innocence' exception of the savings clause of §2255, as it has been interpreted by this Court, is actual innocence of the underlying, substantive offense, not innocence of a sentencing factor.")(internal quotations omitted); Kinder v. Purdy, 222 F.3d 209, 213-14 (5th Cir. 2000) (holding that §2241 is not available where a petitioner "makes no assertion that he is innocent of the crime for which he was convicted"); White v. Rivera, 518 F.Supp.2d 752, 757 n.2 (D.S.C. 2007), *aff'd.* 262 F. App'x 540 (4th Cir. 2008) ("Furthermore, his 'actual innocence' argument concerning an enhancement does not entitle him to

relief under § 2241, as it 'is not the type of argument that courts have recognized may warrant review under § 2241.'"); Boynes v. Berkebile, 2012 WL 1569563, *7 (S.D. W.Va. May 1, 2012).

In reaching this conclusion, the undersigned is mindful of the Fourth Circuit opinions in Simmons and Miller.[13] However, they are clearly distinguishable from this matter. In Simmons, the petitioner was claiming that he was actually innocent of his crime of conviction, being a felon in possession of a firearm. After examining a North Carolina statute, the Fourth Circuit held that 18 U.S.C. § 922(g)(1) did not apply to defendants whose prior conviction could not have resulted in a sentence of more than one year in prison. Petitioner cites to Miller in support of his claim that Simmons is now retroactive to cases on collateral review. However, petitioner misconstrues the Fourth Circuit's holding in Miller. In Miller, the Court held that Simmons is retroactively applicable to cases on collateral review that involve claims of actual innocence of any underlying felon in possession of firearm conviction in violation of 18 U.S.C. § 922(g). However, both decisions involved defendants who alleged that they were factually innocent of their *predicate offense*, and they do not apply to cases, like petitioner's, where the claim is that *prior state convictions* do not qualify as predicate offenses to increase statutory penalties.[14]

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that this matter be **DISMISSED with prejudice.**

---

[13] Miller v. United States, 735 F.3d 141 (4th Cir. 2013)

[14] In a very recent decision, the Fourth Circuit has indicated that equitable tolling applied to a defendant who sought § 2255 relief under Simmons. See Whiteside v. United States, 2014 WL 1364019 (4th Cir. Apr. 8, 2014) (presenting the question whether a federal inmate may use a § 2255 motion to challenge a sentence that was based on a career offender enhancement under the United States sentencing Guidelines when subsequent case law reveals the enhancement to be inapplicable to him.) The undersigned takes no position as to whether the petitioner might now be granted leave by the Fourth Circuit to file a second or successive § 2255 with the sentencing court. Nor, does the undersigned take any position as to merits of the petitioner's claim that he does not have the requisite predicate offenses to qualify him as a career offender. Moreover, in Whiteside, the Court noted that they "**expressly do not decide whether the savings clause in § 2255(e) might justify relief from a Simmons sentencing error through the filing of a § 2241 petition**." Whiteside at fn. 4 (emphasis added).

Within **fourteen (14) days** after being served with a copy of this recommendation, **or by October 8, 2014,** any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985);   Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);   United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: September 24, 2014

/s/ James E. Seibert  
JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE